36 LRA 642

FRANCIS W. HOLBROOK, Receiver,

*v.*

J. W. FORD.

*Filed at Ottawa October 29, 1894.*

|153  633|
|58a 511|
|58a 515|
|153  633|
|165  596|

|153  633|
|110a ³378|

|153  633|
|113a ⁴158|
|114a ⁴638|

1. RECEIVER—*resident and non-resident creditors of insolvents.* The rule that a foreign receiver will not be allowed to maintain an action against the assets of an insolvent debtor as against a resident creditor, does not apply to a receiver appointed by the courts of this State, and under its laws, in a suit instituted by a non-resident creditor.[*]

2. SAME—*of foreign corporation—power to reach debts in another State.* A receiver of the property of a foreign corporation takes no title to debts due it from debtors in another State, although, in the ordinary course of business of the corporation, the debts would have been payable in the State of his appointment.

3. The *locus* of a debt is the domicil of the creditor, which, in the case of a corporation, is the State of its creation.

4. CREDITOR'S BILL—*against foreign corporation does not reach debts due from non-residents.* The filing of a creditor's bill against a foreign corporation creates no lien upon debts due such corporation from residents of a State other than that in which such bill is brought, where there is no service of process upon the corporation.

5. CONTEMPT—*in attaching debts due a receiver—how waived.* The contempt of a resident creditor of a foreign corporation in attaching in another State the debts due such corporation after the appointment of a receiver, and in refusing to dismiss such attachments, is waived by the voluntary appearance of such receiver in the attachment suits.

6. SAME—*what answers a charge of civil contempt.* Interference with the property of a corporation of which a receiver has been appointed, by attaching it, is a civil and not a criminal contempt, and may be answered by showing that the party complaining of the act has waived it.

7. SAME—*proper to consider rights of parties in civil contempt.* A court of equity, asked to proceed as for a contempt against a creditor who attaches debts due to an insolvent debtor from persons residing out of the State, may properly inquire which of the parties has a paramount right to such debts.

*Ford* v. *Holbrook,* 50 Ill. App. 547, affirmed.

---

[*]For a collection of authorities on discriminations between resident and non-resident creditors, and priority between attachments and insolvency transfers or receiverships in other States, see note to *Long* v. *Forest,* 23 L. R. A. 33.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an appeal from a judgment of the Appellate Court reversing an order or decree of the Superior Court of Cook County, finding appellee guilty of contempt of court and directing him to be attached and arrested and imprisoned in the county jail, until he should dismiss certain attachment proceedings begun by him in the States of Nebraska and Missouri, as hereinafter stated. The material facts are as follows :

Charles Palmer, a resident of New York, obtained a judgment for $20,013.75 on December 7, 1892, in said Superior Court against the Powerville Felt Roofing Company, Limited, a corporation organized under the laws of the State of New York. After execution issued and returned unsatisfied, Palmer on said 7th day of December filed a creditor's bill upon said judgment in said Superior Court ; and on the same day said court appointed the appellant receiver of the books and accounts receivable, notes receivable, debts due and all choses in action of said defendant corporation, or held in trust for it, or in which it had any beneficial interest, with the usual powers and duties of a receiver. Among the accounts due to the defendant corporation were two claims against two firms in Nebraska, and one claim against a manufacturing company in Missouri. The appellee, who is a resident of Lake County, Illinois, but is, and has been for a number of years, engaged in business in Chicago, Cook County, Illinois, being a creditor for about $15,000.00 of said defendant corporation, commenced attachment proceedings on the 17th and 19th days of December, 1892, against said defendant corporation in the courts of Nebraska and Missouri, and garnisheed the firms and company in those States who were debtors of said corporation.

On January 7, 1893, the appellant, Holbrook, filed his petition in said Superior Court in said creditor's bill suit, wherein he had been appointed receiver, setting up his appointment; the debts due to the defendant corporation in Nebraska and Missouri; the commencement and pendency of the attachment and garnishee proceedings by appellee, Ford; that, on December 9, 1892, he had mailed notice to said debtors of his right as receiver to collect the amounts due from them; that, on December 30, 1892, he wrote to Ford a letter stating his claim as receiver to said Nebraska and Missouri accounts, and requesting him to withdraw his suits; and that said Ford, by attaching and garnisheeing said claims was interfering with property belonging to the receiver, etc. Said petition prayed for an order on Ford to show cause why he should not be attached for contempt. The order was entered on the same day. To this petition Ford filed an answer, and the receiver filed eight exceptions to the answer. All these exceptions were sustained by the Superior Court except one. Ford elected to stand by his answer; and, the cause coming on to be heard upon the petition of the receiver, answer, replication thereto, the original bill, the order appointing the receiver, etc., the court, on February 7, 1893, entered the order or decree committing said Ford for contempt, as above stated.

The defendant corporation, the Powerville Felt Roofing Company, Limited, had its principal office in New York City, and also a branch office and manufacturing plant in New Jersey; and had property and assets in a number of States, especially in New York and Minnesota. Prior to November 25, 1892, it had maintained a branch office in Chicago, where a part of its business had been transacted, and books of account had been kept. On that day it ceased doing business in Illinois, and its officers turned over its books to said Holbrook, an accountant, to collect the accounts. Before December 6, 1892, in a proceeding against the defendant corporation which

was insolvent, begun in New York, a man named Jowitt was appointed receiver, and was acting as such when the present bill was filed. On November 28, 1892, in a proceeding by a stockholder in New Jersey, the said Jowett was also appointed receiver of the defendant corporation by a chancery court in that State on December 6, 1892. On November 25, 1892, William H. Eberts, the president of the defendant corporation and his brother, residents of Detroit, Michigan, entered up a judgment by confession for $81,000.00 against said defendant corporation and caused execution thereunder to be levied upon all of its tangible property in Cook County, Illinois; and on December 7, 1892, one Judson and other creditors of the corporation in Illinois filed a bill in the Circuit Court of Cook County to set aside said Eberts judgment as fraudulent and to enjoin the sheriff from selling the property levied upon, in which proceeding the Chicago Title and Trust Company, an Illinois corporation, was, on December 13, 1892, appointed receiver by said Circuit Court, and has possession of all the assets levied upon by said sheriff.

Although a letter was sent to Ford, as above stated, on December 30, 1892, yet Ford did not actually receive notice until January 6, 1893, that the receiver claimed the right to collect said debts under his appointment, or requested the withdrawal of said suits and the dismissal of said garnishee proceedings.

On December 30, 1892, the receiver, Holbrook, appeared in the Nebraska courts and moved to be made a party defendant to the suits there pending between Ford, plaintiff, and the said Powerville Felt Roofing Company, Limited, defendant, and the following order was therein entered: "Upon application made by Francis W. Holbrook, receiver, it is hereby ordered and decreed that Francis W. Holbrook, receiver of Powerville Felt Roofing Company, Limited, appointed by the Superior Court of Cook County, Illinois, be and is hereby made party

defendant in the above action, with power to appear and assert rights in said action, to which plaintiff excepts."

The note upon which the judgment in favor of Palmer was entered, was executed on November 25, 1892, by Francis J. Palmer, as treasurer of the defendant corporation, and who was the son of said Charles Palmer.

Messrs. FLOWER, SMITH & MUSGRAVE, for the appellant:

The order entered finding Ford in contempt and committing him, is similar to the one entered in the case of *Sercomb* v. *Catlin*, 128 Ill. 556, and no question is raised as to its form.

The *situs* of these debts, if that question be material, was at the place where they were payable.   Wharton on Conflict of Laws, (1st ed.) sec. 365.

The case of *United States Express Co.* v. *Smith*, 35 Ill. App. 98, is not in point, for the ground of the decision in that case was, that inasmuch as the receiver had appeared and litigated the question in New York, and judgment had been there entered against him, he was concluded.

The case of *Cole* v. *Cunningham*, 133 U. S. 107, is authority for the point that no proceedings so far taken by the Nebraska court estop the receiver from proceeding against Ford here, where he resides.

Wherever the creditor might maintain a suit to recover the debt, there it may be attached as his property, provided, of course, the laws of the forum authorize it. *Embree* v. *Hanna*, 5 Johns. 101; *Blake* v. *Williams*, 6 Pick. 285 ; *Lewis* v. *Bush*, 30 Minn. 247; Drake on Attachment, sec. 597; *Green* v. *Van Buskirk*, 74 U. S. 139 ; *Railroad Co.* v. *Thompson*, 31 Kan. 180 ; *Mooney* v. *Railroad Co.* 60 Iowa, 346 ; *Roache* v. *Insurance Ass.* 2 Ill. App. 360.

The domicil of a corporation (as well as the *situs* of a debt) is to be determined by reference to the matter under consideration and the circumstances of the case.   A cor-

poration, for many purposes, may have more than one domicil. *Attorney General* v. *Mining Co.* 99 Mass. 148; *Ricker* v. *Loan and Trust Co.* 140 id. 346; *Glaize* v. *Railroad Co.* 1 Strobh. 70; *Iron Co.* v. *Maclaver*, 5 H. L. Cas. 416.

A corporation may acquire a domicil in a foreign State by doing business there. *Smith* v. *Pilot Manf. Co.* 47 Mo. App. 409; Murfree on Foreign Corp. sec. 383; Dicey on Domicil, 110.

A receiver is not the agent or representative of either party to an action, but is uniformly regarded as an officer of the court, and he has only such power as the court gives him. High on Receivers, secs. 1, 2; *Hooper* v. *Winston*, 24 Ill. 353.

And before he can intervene in a foreign jurisdiction he must obtain the authority of the court to do so. *Screven* v. *Clark*, 48 Ga. 41; High on Receivers, 208; Beach on Modern Equity Pr. sec. 742; *Battle* v. *Davis*, 67 N. C. 252; *Green* v. *Winter*, 1 Johns. Ch. 60; *Tracy* v. *Bank*, 37 N. Y. 523; *Barton* v. *Barbour*, 104 U. S. 176; *Davis* v. *Creamery Co.* 128 Ind. 122.

This question was discussed in the case of *Smith* v. *Express Co.* 135 Ill. 279.

Mr. C. B. SAMSON, for the appellee:

Where receivers have been appointed by different courts over the same funds or estate in different proceedings, both are not permitted to act, and the rights are to be determined by the priority of appointment. 20 Am. & Eng. Ency. of Law, 134.

The receiver has submitted himself to the jurisdiction of a foreign tribunal, and that tribunal has now complete jurisdiction of the parties and the subject matter in controversy. *Express Co.* v. *Smith*, 35 Ill. App. 98.

Whenever the legal or equitable rights of our own citizens would be infringed upon, then all creditors should be left free to act. *Express Co.* v. *Smith*, 35 Ill. App. 97.

That the officer of a foreign court should not be permitted, as against claims of creditors resident here, to remove from this State the assets of the debtor, is a proposition that appears to be asserted by all the decisions. *Hurd* v. *City of Elizabeth*, 41 N. J. L. 1.

Mr. JUSTICE MAGRUDER delivered the opinion of the court :

It is claimed that the decree of the Superior Court is erroneous, because it enures to the benefit of Palmer, the non-resident complainant in the creditor's bill, rather than to the benefit of Ford, the attaching creditor in the foreign States, who is a resident of the State of Illinois. Where the controversy is between a foreign receiver, assignee or trustee, and an attaching creditor who resides in the State where the attachment proceeding is instituted, the courts of the latter State will protect its own citizen. This doctrine proceeds upon the ground, that such an official, appointed under the laws of one State, has no extra-territorial right of action except as a matter of comity, and that, as against its own citizens, no State will extend its comity to a receiver, assignee or trustee appointed under the laws of another State.

In *Heyer* v. *Alexander*, 108 Ill. 385, a voluntary assignment for the benefit of creditors, executed by a resident of Missouri in that State and under its laws, and conveying property in Illinois, was held not to be operative to convey the title, as against creditors resident in Illinois suing by attachment. The contest there was between an attaching creditor resident here, and an assignee under a foreign assignment.

In *Rhawn* v. *Pearce*, 110 Ill. 350, where creditors residing in Pennsylvania brought an attachment suit in Illinois against their debtor also residing in Pennsylvania, and garnisheed a debt due to said debtor from a firm in Illinois, and trustees, residing in Pennsylvania and appointed by a court in that State and vested by a statute

in that State with the title to said debtor's estate, inter-pleaded in the garnishment proceeding and claimed the property, it was held that the statutory title of the trustees was inoperative as against the attaching cred-itors, and that the transfer to the trustees, being by mere operation of the Pennsylvania statute, could not have any extra-territorial effect, so as to be operative in this State, either against our own citizens, or the citizens of other States. There, the contest was between a for-eign statutory trustee without any conveyance by the owner of the property, and a foreign attaching creditor.

In *May* v. *First National Bank*, 122 Ill. 551, a New York firm made an assignment for the benefit of creditors, executed in conformity with our statute for the convey-ance of real estate, and conveying land in Cook County, Illinois, and recorded in the recorder's office of that County on July 28, 1884; on August 22, 1884, a bank in Massachu-setts commenced an attachment suit against said firm in Cook County, and levied the writ upon said land; the assignee interpleaded and set up the deed of assignment; and it was held that the deed of assignment was valid as against the Massachusetts creditor, it not being in con-travention of our laws or public policy. There, the con-test was between an assignee in a voluntary assignment executed by a non-resident debtor, and a foreign attach-ing creditor. To the same effect is *Juillard* v. *May*, 130 Ill. 87.

In *Woodward* v. *Brooks*, 128 Ill. 222, creditors living in Pennsylvania brought attachment in Illinois against their debtor who also lived in Pennsylvania and garnisheed money in Illinois due to said debtor; before the attach-ment the debtor had made a voluntary assignment for the benefit of creditors valid under the laws of Pennsylvania, and had recorded it in that State; the assignee inter-pleaded claiming the money in the garnishee's hands; and it was held, that, "as a voluntary foreign assignment, valid in the State where made is enforced in this State

as a matter of comity, our courts will not enforce it to the prejudice of our citizens who may have demands against the assignor; * * * but for all other purposes, and between citizens of the State where the assignment was .made, if valid by the *lex loci,* it will be carried into effect by the courts of this State." There, the contest was between a foreign assignee, and attaching creditors resident in the same State with the assignor and where the assignment was made.

In the recent case of *Townsend* v. *Coxe,* 151 Ill. 62, the controversy was between foreign creditors attaching in this State the property of a foreign corporation, and the assignee in a foreign assignment which was not voluntary, but statutory; and it was held, that such an assignment was not operative in this State as against the attaching creditors.

In the case at bar, there is no controversy between any foreign receiver or assignee on the one side, and a domestic creditor on the other. The receiver, here seeking to stop the prosecution of the suits in Nebraska and Missouri by a creditor living in Illinois, is an Illinois receiver appointed by an Illinois court in a proceeding pending in Illinois. It is true, that Palmer is a resident of New York, but he brought suit and obtained judgment in Illinois, and filed his bill and procured the appointment of a receiver here. But non-resident creditors have the same right to pursue the remedies prescribed by our laws for the collection of debts as resident creditors have. "Once properly in court and accepted as a suitor, neither the law, nor court administering the law, will admit any distinction between the citizen of its own State and that of another." (*Hibernia Nat. Bank* v. *Lacombe,* 84 N. Y. 367). A foreign receiver, holding his office by operation of a foreign law, will not be allowed to maintain a right of action against the assets of an insolvent debtor in this State as against a creditor resident in this State ; but no such restriction applies to a receiver appointed by the

courts of this State and under its laws, even though such receiver is appointed in a suit instituted by a non-resident creditor.

It is sought to distinguish the present case from *Sercomb* v. *Catlin*, 128 Ill. 556, upon the alleged ground, that, there, the complainants in the creditor's bill in which the receiver was appointed were either residents of Illinois, or are not shown to have been non-residents of this State, while here the complainant is a non-resident. We do not think, that any such distinction can be drawn, because the residence of the complainant is immaterial where the receiver is the officer of a court in this State.

Nor can any distinction be fairly drawn between this case and the *Sercomb* case, on the ground that Sercomb, the party enjoined from prosecuting the attachment suit in the District of Columbia, was the representative of a foreign corporation, while, here, Ford, the creditor enjoined from prosecuting the foreign attachments, is a resident of Illinois. The right of a court of equity to restrain the prosecution of a suit in another State is founded upon the fact, that the court is vested with authority over persons within the limits of its jurisdiction and amenable to its process. Here, Ford is a resident of Illinois doing business in Chicago. In the *Sercomb* case, Sercomb, though the agent of a Connecticut corporation, lived in Illinois, was the business manager of the corporation here, began and controlled the attachment suit in Washington, and was amenable to process in this State. (*Dehon* v. *Foster*, 4 Allen, 545; *Cole* v. *Cunningham*, 133 U. S. 107).

But there are several respects in which the facts here differ from those in the *Sercomb* case. In the first place, the creditor in that case, who instituted the attachment proceeding in the foreign jurisdiction, had full knowledge, before he did so, of the appointment of the receiver in the creditor's suit in Illinois. Here, although the receiver was appointed ten days before Ford began his attachment proceedings in the foreign jurisdictions, yet

Ford had no notice or knowledge of such appointment when he garnisheed the debts due the judgment debtor in Nebraska and Missouri. Such previous knowledge of the appointment of the receiver, or of the insolvency of the principal debtor, has been deemed material in those cases where courts have enjoined the prosecution of foreign suits, or have committed the creditors so prosecuting them for contempt. (*Dehon* v. *Foster, supra; Chaffee* v. *Quidnick Co.* 13 R. I. 442; *Vermont & Canada R. R. Co.* v. *V. C. R. R. Co.* 46 Vt. 792).

In the second place, the principal debtor in the present case is a foreign corporation. A court in one State may appoint a receiver for a corporation organized in another State and doing business within its own territory and having property there. This may be done, although the courts in the home State of the corporation may have already placed its affairs in the hands of a receiver. (*De-Berner* v. *Drew*, 57 Barb. 438; *National Trust Co.* v. *Miller*, 33 N. J. Eq. 155; *Hunt* v. *Columbian Ins. Co.* 55 Me. 290; *Life Association of America* v. *Fassett*, 102 Ill. 315). The receiver appointed in the foreign State will be regarded as ancillary or auxiliary to the receiver appointed in the State to which the corporation owes its creation. (8 Am. & Eng. Enc. of Law, page 408). Hence, we do not consider the fact, that receivers were appointed in New York and New Jersey for the Powerville Felt Roofing Company, Limited, the corporation defendant in the present case, as in any way restricting the right of the courts in this State to appoint a receiver for such defendant, if the other necessary conditions to the appointment of such receiver existed here.

The general rule is, that a court of equity will not appoint a receiver for a foreign corporation, where such corporation has no property in the State of the appointing court, and has not appeared or been served with process in the proceeding in which the appointment of the receiver is applied for, and where none of the officers

or agents controlling or representing the corporation reside or are to be found in the State of the appointing court. The object of appointing a receiver for a foreign corporation is to preserve its property and effects for the benefit of creditors and shareholders. (Wait on Insolvent Corp. sec. 188 ; 8 Am. & Eng. Enc. of Law, page 408; *Life Ass'n of America* v. *Fassett, supra; Redmond* v. *Hoge*, 3 Hun, (N. Y.) 171; *National Trust Co.* v. *Miller, supra; Shaw* v. *Shore*, 5 L. I. Rep. N. S. Eq. 79; *Stafford* v. *American Mills Co.* 13 R. I. 310 ; *H. & St. J. R. R. Co.* v. *Crane*, 102 Ill. 249).

In the case at bar, it appears that all the tangible property of the Powerville Felt Roofing Company, Limited, in Cook County, Illinois, was taken by the sheriff under the Eberts judgment, and is now in the hands of the Chicago Title and Trust Company, a receiver appointed in another proceeding; and that the Company ceased doing business in this State on November 25, 1892, and that, at the time this creditor's bill was filed, no officer, agent or employe of said Company resided or had any place of business in this State. It furthermore appears from an examination of the record, that the receiver was appointed upon the same day on which the creditor's bill was filed ; and that the Roofing Company, the judgment debtor, was not served with process, nor did it enter its appearance in the cause, either before such appointment, or at any time thereafter. We do not deem it necessary, however, to hold that there were no assets of the Roofing Company in this State, which would justify the appointment of a receiver. As the receiver appointed for a foreign corporation must be appointed to take possession of the assets in the State where he is appointed, and acquires title to such assets only, the question arises whether the debts owing to the Roofing Company from the parties in Nebraska and Missouri, can be regarded as property or assets in Illinois.

In construing the meaning of the words, "property in this State," we have held, that, "since the only property right which there can be in a debt is the mere right to receive payment of it, it is impossible that there can be anything of a tangible nature connected with such right which can occupy locality, and, so, the property right must accompany and remain with the person of the owner of the debt, and, therefore, it cannot be in this State when the domicil of the owner is in another State." (*Cooper* v. *Beers*, 143 Ill. 25). "Contracts respecting personal property and debts are now universally treated as having no *situs* or locality, and they follow the person of the owner in point of right." (Story's Conflict of Laws, sec. 362). *Mobilia inhærent ossibus domini.* Wharton on Conflict of Laws, at sec. 363, says: "The remaining theory * * * is that of the *lex domicilii* of the creditor. This theory is now generally accepted in England and the United States. * * * *Mobilia sequunter personam* is a maxim, * * * peculiarly applicable to debts which have no local site, and which therefore follow the owner."

Here, the debts garnisheed belong to the Powerville Felt Roofing Company, Limited, which is a corporation organized under the laws of New York. A foreign corporation has its domicil in the State from which it derives its existence. (8 Am. & Eng. Enc. of Law, page 330, and cases cited). "A corporation is an artificial being, and has no dwelling either in its office, its warehouses, its depots or its ships. Its domicil is the legal jurisdiction of its origin, irrespective of the residence of its officers, or the place where its business is transacted." (*Merrick* v. *Van Santvoord*, 34 N. Y. 208; *B. & O. R. R. Co.* v. *Glenn*, 28 Md. 287; *Insurance Co.* v. *Francis*, 11 Wall. 210; *State Treasurer* v. *Auditor General*, 46 Mich. 224). The residence of a corporation is the State which creates it. It cannot change its domicil at will, and, although it may be permitted to transact business in another State, it cannot on that account acquire a residence there. (*Insur-*

*ance Co.* v. *Francis, supra;* Dicey on Domicil, page 112; *Kirtland* v. *Hotchkiss,* 100 U. S. 419).

Inasmuch, therefore, as the debts due to the Roofing Company must be regarded as situated at its domicil, they are located in New York and not in Illinois, and cannot therefore be regarded as passing to appellant as receiver. Even if the residence of the debtors should be regarded as the location of these debts, they would not be property or effects in Illinois, but would be located in Nebraska and Missouri.

The commencement of a suit by filing a bill does not constitute *lis pendens* until summons or subpœna has been served. (*Grant* v. *Bennett,* 96 Ill. 513). Accordingly, it has been held that the lien created by a creditor's bill only comes into existence by the filing of the bill and service of process. (*Hallorn* v. *Trum,* 125 Ill. 247; *King* v. *Goodwin,* 130 id. 102; *First Nat. Bank* v. *Gage,* 93 id. 172). Here, as there was no service of process upon the Roofing Company, no lien, equitable or otherwise, could have been acquired upon the debts garnisheed by appellee.

It is claimed, that, in the ordinary course of the business of the Roofing Company as conducted at its Chicago branch, these debts would have been payable at the Chicago office, and that their *situs* must be regarded as being in Illinois, because they are thus alleged to have been payable in Illinois. There would be much force in this position if the debts were payable to a domestic corporation, but it cannot be considered as entitled to much weight here, where the debts are payable to a foreign corporation. (*Osgood* v. *McGuire,* 61 N. Y. 524).

In the third place, it appears here, that, before a rule was entered upon appellee requiring him to show cause why he should not be committed for contempt, the appellant as receiver had intervened in the garnishment proceedings in Nebraska, and, upon his own application, had been made a defendant in those proceedings, and had been granted the power to appear and assert his rights

therein. The suits, which appellee was required to dismiss, were suits in which the receiver had voluntarily made himself a defendant. He had, of his own accord, submitted to the jurisdiction of the foreign court with a view of there contesting his rights. It has been held, that, where a party has been guilty of a contempt of court by bringing suit against a receiver without leave, the contempt is waived by the appearance of the receiver in the suit. (*Mulcahey, Jr.* v. *Strauss*, 151 Ill. 70).

Contempts have been classified into direct and constructive, the former being those committed in the presence of the court or so near as to interrupt its proceedings, the latter being those which arise from matters not transpiring in court, but from refusal to obey its orders and decrees that are to be performed elsewhere. Interfering with property in the possession of a receiver is a constructive contempt. (Rapalje on Contempts, secs. 22, 24). Contempts have been still further classified into criminal and civil, the former being acts in disrespect of the court or its process, or tending to bring it into disrepute, or obstruct the administration of justice; the latter being "those *quasi* contempts which consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court." (Rapalje on Cont. sec. 21). "If the contempt consist in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil." (*Phillips* v. *Welch*, 11 Nev. 187). In such case "the private party alone is interested in the enforcement of the order, and the moment he is satisfied, the imprisonment terminates." (Idem). A motion to commit for such a contempt may be answered by showing that the party complaining of it has waived it. "Waiver only applies where the contempt has arisen from breach of an order made in favor of any party—not, of course, to contempts of the court itself." (Oswald's Contempt of Court, pages 113, 114).

In the case at bar, the order of committal because of refusal to dismiss the foreign suits was made for the benefit and advantage of Palmer, the complainant in the creditor's bill. A receiver under a creditor's bill is not necessarily a trustee for the benefit of all the creditors, but for the benefit of the creditors in whose behalf he is appointed. (*Young* v. *Clapp*, 147 Ill. 176). In his answer to the petition of the receiver, the appellee set up the order of the foreign court making the receiver a party to the foreign suits at his own request. We are inclined to think, that the answer thereby showed, in connection with the other circumstances heretofore mentioned, a good defense to the motion or petition for an attachment, on the ground that the action of the receiver in submitting to the jurisdiction of the foreign court with a view of having his rights determined there amounted to a waiver of the contempt. It is true, that the mere pendency of a suit in one State cannot be pleaded in bar or abatement of a second action in another State even between the same parties, and for the same cause of action. (*Allen* v. *Watt*, 69 Ill. 655). The reason for this rule is that the defendant would not be obliged to pay the money twice, since payment at least, if not a recovery in the one suit, might be pleaded *puis darrein continuance* to the other suit; and if the two suits should ever proceed *pari passu* to judgment and execution, a satisfaction of either judgment might be shown in discharge of the other. (*Bowne* v. *Jay*, 9 Johns. 221; *Walsh* v. *Durkin*, 12 id. 99; *Embree* v. *Hanna*, 5 id. 101). But it is manifest, that neither the rule, nor the reason for it, has any application here. That may be a good answer to a motion to commit for contempt which may not be a good defense upon the merits. In the *Sercomb* case, the receiver had not intervened in the foreign suit when the application to commit for contempt was made; and therefore whatever was there said, inconsistent with the proposition that such an intervention as is shown under the circumstances of the present case can

be regarded as a waiver, must be modified to accord with the views here expressed. Where a court of equity is asked to proceed as for a contempt against a creditor, who seeks to reach by attachment or garnishment debts due to an insolvent debtor from persons residing out of the State, it is proper to enquire which of the parties has a paramount right or superior equity to those debts. (*Dehon* v. *Foster, supra*).

For the reasons here stated, the judgment of the Appellate Court is affirmed, and the decree or order of the Superior Court of Cook County is reversed and the cause is remanded to the latter court for further proceedings in accordance with the views here expressed.

*Judgment affirmed.*